IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE MARIE TROMLER, | ) | Case No. 1:24-cv-00492 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| COMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.     Introduction

Plaintiff, Denise Marie Tromler ("Tromler"), seeks judicial review of the final decision of

the Commissioner of Social Security denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. Tromler raises two issues on review of the

Administrative Law Judge's ("ALJ") decision, arguing:

1.    The ALJ failed to support her conclusions regarding the opinions of the treating
sources with substantial evidence; and,

2.    The ALJ committed harmful error when she failed to properly apply the criteria of
Social Security Ruling 16-3p and failed to find that the intensity, persistence and
limiting effects of Tromler's symptoms precluded her from engaging in
substantial gainful activity on a full-time and sustained basis.

Because the Administrative Law Judge ("ALJ") applied proper legal standards and

reached a decision supported by substantial evidence, I recommend that the Commissioner's

final decision denying Tromler's application for DIB be affirmed.

## II.     Procedural History

On October 13, 2022, Tromler filed an application for DIB alleging her disability began

March 15, 2022. She alleged disability due to Major Depressive Disorder ("MDD"),

hypertension, back injury, left elbow and left foot. (Tr. 170). The claims were denied initially and on reconsideration. (Tr. 74, 86). She then requested a hearing before an ALJ. (Tr. 102). Tromler, with representation, and a vocational expert ("VE") testified before the ALJ on October 25, 2022. (Tr. 43-64).

On November 28, 2023, the ALJ issued a written decision finding Tromler not disabled. (Tr. 21-42). The Appeals Council denied her request for review on November 1, 2023, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 8-13). Tromler timely instituted this action on March 15, 2024. (ECF Doc. 1).

## II.  Evidence

### A.  Personal, Educational and Vocational Evidence

Tromler was 51 years old on the date her application was filed. (Tr. 146). She dropped out of school while in the twelfth grade. (Tr. 51). She has past relevant work as a sheet metal worker, DOT 804.281-010, SVP 7, and medium exertional level, although she performed it at a heavy exertional level; and as a metal worker supervisor, DOT 809.130-014, SVP 8, performed at the medium exertional level. (Tr. 60-61).

### B.  Relevant Medical Evidence

Records submitted from Cleveland Psychiatry Associates indicate that on July 6, 2022, Tromler shared with her counselor, Stephen Pessefall, PMHNP-BC, that she was not sure if she was "seriously depressed, going crazy or both." (Tr. 260). Examination notes revealed that she had some history of anger and aggressive behavior. (*Id.*). Her symptoms included loss of interest, poor concentration, fatigue, worthlessness, hopelessness, increasing worry, irritability, isolation, sadness, and poor sleep. (*Id.*).

On August 1, 2022, Tromler presented at the MetroHealth Emergency Department expressing suicidal ideations, generally relating to the loss of her job and associated financial stressors. (Tr. 286). As she described having a plan to carry out her suicidal ideations, and having access to a firearm, hospital staff determined her to be high risk and she was admitted. (Tr. 288). She described herself as depressed and hopeless, and noted her depression symptoms had made it difficult to get out of bed to go to work. (Tr. 289). She also felt her meds that had been effective, had suddenly stopped working. (Tr. 289). She was diagnosed with major depressive disorder ("MDD"), recurrent, severe and remained hospitalized until August 9, 2022. (Tr. 294).

Upon her release from the hospital, Tromler met with Pessefall on August 10, 2022, and described her mood as "better" and denied any depression or anxiety symptoms. (Tr. 257). She met with Pessefall again on September 7, 2022, and again reported no symptoms, and noted that she was having a good summer, and that she had been doing house and yard work. (Tr. 254). Tromler attended an appointment with Recovery Resources on October 13, 2022, appeared ungroomed, and was wearing dirty clothing. (Tr. 278). She described her mood as poor owing to the loss of employment. (*Id.*). On October 21, 2022, she met again with Pessefall and reported that her medications seemed to be effective, but that she felt she could not work due to feeling depressed and overwhelmed. (Tr. 250).

On October 24, 2022, Tromler went to MetroHealth for management of her hypertension medication. (Tr. 273). There she reported chronic back pain she had been experiencing for two years that was non-radiating and was being treated with lidocaine patches. (*Id.*). She reported having friends over to watch a Cleveland Browns football game on November 18, 2022 (Tr. 484), and noted on December 7, 2022, that she had hosted Thanksgiving at her house and that her mood was good. (Tr. 480). An x-ray of her lumbar spine performed on January 11, 2023

3

showed moderate degenerative changes, with disc space narrowing at L4-5 and L5-S1, and mild narrowing in the upper levels of the lumbar. (Tr. 440).

On February 8, 2023, Tromler reported to Pessefall that she had hosted her family for the holidays, and she felt like things were going "ok." (Tr. 477). At an appointment with Pessefall on March 31, 2023, however, Tromler reported she could not sit still due to her depression symptoms and she felt like her head was "spinning like a top." (Tr. 473). She also injured her back pulling weeds in her garden in April 2023 (Tr. 518) and treated with a chiropractor from April 13, 2023-May 4, 2023. (Tr. 491-508). On June 23, 2023, Tromler reported to Pessefall that she felt she needed her medications adjusted because she "did not see the light at the end of the tunnel." (Tr. 514). On August 18, 2023, Tromler reported she was mostly okay, and was only having a few depressing days per month. (Tr. 510).

### C.  Medical Opinion Evidence

#### 1.  State Agency Reviewers

On December 31, 2022, state agency reviewing psychologist David Dietz, Ph.D., found that Tromler had moderate limitations in the domains of concentration, persistence or maintaining pace, and adapting or managing oneself. (Tr. 68). Dr. Dietz further determined that she was moderately limited in her ability to maintain attention and concentration; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, to respond appropriately to changes in the work setting. (Tr. 71-72). That opinion was confirmed at the reconsideration level on June 1, 2023, by Courtney Zeune, Psy.D. (Tr. 83).

On February 26, 2023, state agency reviewing physician Dana Schultz, M.D., determined that Tromler was capable of occasionally lifting and/or carrying 20 pounds, and that she could

4

frequently lift and/or carry 10 pounds, consistent with a light exertional level. (Tr. 70). She was limited to six hours of sitting, standing or walking during an eight-hour workday. (*Id.*).  Dr. Schultz further restricted Tromler to frequent climbing of ramps or stairs, with no climbing of ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, or crawling; and avoiding all exposure to workplace hazards including heavy machinery, unprotected heights, and commercial driving. (*Id.*). Dr. Schultz' opinion was confirmed at the reconsideration level by Gerald Dzurik, M.D. on May 25, 2023. (Tr. 82).

## 2.  Consultative Examination Reports

On January 21, 2023, Tromler attended a consultative examination with Paul Oh, M.D., alleging disability due to back pain, left elbow pain, and depression. (Tr. 444). Tromler reported she had experienced back pain for 20 years, with symptoms including pain, tingling in the left arm, and decreased lumbar range of motion. (*Id.*). Her pain intensity was 8/10 most days. (*Id.*). She reported a 15-year history of left elbow pain on the lateral aspect. (*Id.*). The pain was worse when grasping or picking items up. The pain in her left elbow was 7/10 most days. (*Id.*) She also reported a 15-year history of depression, and she sometimes had trouble sleeping. She was treating her depression with counseling and medications. She had experienced suicidal thoughts. (Tr. 444-45). Dr. Oh noted that Tromler had good eye contact and fluent speech, her mood was appropriate, and she had clear thought processes. (Tr. 447). Her gait was steady and symmetric. There was tenderness of the low back to palpation. (*Id.*). She had some decreased range of motion in the lumbar spine laterally on flexion and extension, otherwise she had good strength and sensory function. (Tr. 449). Dr. Oh assessed Tromler with mild limitation with sitting, standing and walking; mild limitation with lifting or carrying weight; and she was limited to frequent bending, stooping, crouching and squatting. (*Id.*).

5

### 3.    Treating Source Opinions

On October 21, 2022, Tromler's treating source, NP Pessefall, diagnosed her with Major Depressive Disorder, and determined her prognosis to be "fair." (Tr. 247). He opined, in check-the-box form, that Tromler was unable to meet competitive standards in performing activities within a schedule; working in coordination with or in proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; understanding and remembering detailed instructions; responding appropriately to changes in the work setting; and being aware of normal hazards and taking appropriate precautions. (Tr. 247-48). NP Pessefall further opined that Tromler was seriously limited, but not precluded from carrying out very short and simple instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; managing regular attendance and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; performing at a consistent pace without an unreasonable number and length of rest periods; remembering locations and work-like procedures; understanding and remembering very short and simple instructions; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavior extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and setting realistic goals and making plans independently of other. (*Id.*). He opined that Tromler would be absent five to six times monthly and off-task five to six days monthly. (Tr. 248). On August 8, 2023, NP Pessefall rendered a second opinion that was identical to the first. (Tr. 508-09).

D.      **Administrative Hearing Evidence**

On October 25, 2023, Tromler testified before the ALJ that she has a driver's license but is unable to drive. She resides with her mother and did not complete the twelfth grade. (Tr. 51). She last worked in June or July, but she had left her previous long-term job with the intention to camp for the next year with her dogs. (Tr. 51-53). She is not seeking work because she is incapable of showing up on time, and sometimes does not show up at all. (Tr. 53). There are days she lays in bed all day. (*Id.*).

She complained of depression and had tried to start counseling, but her insurance would not cover the cost. (*Id.*). She does take medication that is prescribed by a psychiatrist she sees about every month or month and a half. (*Id.*). Her typical day consists of letting her dogs out, making coffee for her and her mother, laying around watching television, and sometimes cooking. (Tr. 54). She will wash dishes and dust her house. (*Id.*). She enjoys camping but does not go often. (Tr. 55). She will walk her dogs but finds it difficult. (*Id.*). She will typically forget a television show she watched after a couple of days. (*Id.*).

Tromler generally keeps in touch with one friend, and she has another friend in Nebraska she may speak to once yearly. (*Id.*). She only leaves home to go to Wal-Mart, McDonald's, or her friend's house. (*Id.*). She only makes short visits to Wal-Mart. (*Id.*).

With medication, her depression has remained "the same." (Tr. 56). In a typical month she will have 20 good days and 10 bad days. (*Id.*). On a bad day she will not get out of bed, and she can remain in bed for as long as two days. (*Id.*). During bad days she will not talk to anyone or answer her phone. (*Id.*). She currently has no interest in working and feels she would still be incapable of showing up on time. (Tr. 57). She will often make plans and then not show up. (Tr.

58). She also noted that her back is often "very uncomfortable," and she is sometimes incapable of rolling over. (*Id.*).

Following Tromler's testimony, VE Sarah Holmes testified. The VE testified that Tromler's past work included sheet metal worker, DOT 804.281-010, SVP 7, and medium exertional level per the DOT, although she actually performed the work at the heavy level. She also worked as metal worker supervisor, DOT 809.130-014, SVP 8, and a medium exertional level. (Tr. 60-61).

The ALJ proposed a  single hypothetical asking the VE to consider an individual capable of working at the light exertional level with no climbing of ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional stooping or crawling and frequent balancing, kneeling and crouching; avoiding operation of heavy machinery, unprotected heights or commercial driving; limited to simple or moderately complex tasks in a job with no strict production or fast pace such as assembly line work; able to meet production requirements, allowing for functional and goal-oriented pace; able to maintain focus, persistence, concentration, pace and attention in such tasks in two-hour increments for eight-hour workdays within the confines of normal work breaks and lunch periods; and can deal with occasional changes in a routine work setting. (Tr. 61). The VE opined this individual would be unable to perform Tromler's past work but would be able to perform other jobs in the national economy. Examples of such jobs include cleaner/housekeeper, DOT 323.687-014, with approximately 240,000 jobs nationally; merchandise marker, DOT 209.587-034, with approximately 800,000 jobs nationally; and cashier, DOT 211.462-010 with approximately 340,000 jobs nationally. (Tr. 61-62). The VE testified that an individual could be off task no more than 15 percent of the workday to maintain

employment and could be absent no more than once or twice per month, and really no more than six to eight times annually. (Tr. 62).

## III.    The ALJ's Decision

In her decision dated November 28, 2023, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 21, 2027.

2.    The claimant has engaged in substantial gainful activity from March 15, 2022 through June 2, 2022 (20 CFR 404.1571 *et seq*.).

3.    The claimant has the following severe impairments: lumbar degenerative disc disease and major depressive disorder (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes or scaffolds. She can occasionally use ramps and stairs. She can occasionally stoop and crawl. She can frequently balance, kneel and crouch. She should avoid operating heavy machinery, work around unprotected heights, or commercial driving. She can perform simple to moderately complex tasks in a job with no strict production or fast pace such as assembly line work. She can meet production requirements that allow a flexible and goal-oriented pace. She can maintain the focus, persistence, concentration, pace and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. She can deal with occasional changes in a routine work setting.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on September 18, 1971, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at limited education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.  (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2022, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14-40).

## IV.    Law and Analysis

### A.    Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.    whether the claimant is engaged in substantial gainful activity;

2.    if not, whether the claimant has a severe impairment or combination of impairments;

3.    if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.    if not, whether the claimant can perform their past relevant work in light of his RFC; and

5.    if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[1]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B.    Standard of Review

This Court reviews the Commissioner's final decision to determine if it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

---

[1] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## V.    Discussion

Tromler brings two issues for this Court's review:

1.  Whether the ALJ failed to support her conclusions regarding the opinions of the treating sources with substantial evidence; and

2.  Whether the ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Tromler's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF Doc 7, p. 1).

### A.    The ALJ supported her conclusions regarding the opinions of the treating sources and state agency reviewing physicians with substantial evidence.

Although Tromler's first argument is presented as a challenge to the ALJ's assessment of the treating source opinions, the body of the argument challenges both the assessment of the

12

treating source opinions and the opinions of the state agency reviewing physicians. Accordingly, the ALJ's treatment of the different opinions in the file will be addressed separately.

### 1.       Treating Source Opinion

Certified Nurse Practitioner Steve Pessefall of Cleveland Psychiatry Associates consistently provided counseling services to Tromler throughout the period in question. The record includes two identical opinions Pessefall rendered regarding Tromler's mental health, the first issued on October 21, 2022, and the second on August 18, 2023. (Tr. 267, 508-09). As noted above, Pessefall opined that in all areas considered, Tromler was either "unable to meet competitive standards" or "seriously limited, but not precluded." (*Id.*). As the opinion was presented in check-the-box form, very little explanation is provided for the conclusions Pessefall reached. (*Id.*).

Tromler argues that the ALJ failed to support her conclusions and did not discuss the supportability and consistency of the opinions. (ECF Doc. 7, pp. 8-10, citing Tr. 31-34, 250, 260, 278, 286-295, 470, 514). Tromler offers several examples from the records that she contends show Pessefall's opinions were supported by his treatment notes and were consistent with other evidence in the record. (*Id.*). The Commissioner responds by citing to several examples from the ALJ decision that reflect where in the record she found support for, and consistency with, her assessment of Pessefall's opinion. (ECF Doc. 9, pp. 16-18, citing Tr. 33-35, 250, 254, 257-258, 275, 280, 282, 448, 473, 477, 480, 484, 510, 514, 518).

The ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ must "articulate how [he] considered the medical opinions" and "how persuasive [he] find(s) all of the medical opinions." 20 C.F.R § 416.920c, see *Gamble v. Berryhill*, No. 5:16-CV-2869, 2018 WL 1080916, *5 (N.D.

Ohio, Feb. 28, 2018). At a minimum, the ALJ must explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5). Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion. *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

The record here supports the ALJ's conclusion that Pessefall's opinion was "inconsistent with his own treatment." (Tr. 34). The ALJ's decision specifically cited numerous examples within the record to support her conclusion, noting the records showed:

> that overall, she had few depressive days. ([Tr. 510]). Her mental status had no gross abnormalities. She was friendly and communicative. She had no suicidal thoughts. Her thinking was generally intact, and her thought content was appropriate. There were no signs of anxiety. Examination showed her dress and grooming were appropriate. ([Tr. 473]). She was friendly and communicative. Her mood was euthymic. Her thinking was generally logical, and her thought content was appropriate. Her cognitive thinking was intact. The record as whole supported improvement after her hospitalization for depression, and she had no more than moderate mental limitations. Mr. Pessefall noted that the claimant had "no apparent serious mental status abnormalities." ([Tr. 250]).

(Tr. 34). The ALJ also cited evidence from other providers, including another treating source, Dr. Fink, and the consultative examiner, Dr. Oh, that indicated normal mood and affect as well as normal memory and concentration to show inconsistency with other sources. (Tr. 32-34). The two identical opinions offered by Pessefall clearly conflict with the citations the ALJ noted from Pessefall's exam records, and other sources. These notations do not support the determination

14

that Tromler was "unable to meet competitive standards" in multiple areas that were evaluated in the check-the-box format of Pessefall's opinion. Without any accompanying explanation for the assessed limitations, there cannot be a further understanding of the basis of Pessefall's opinion, nor an understanding that overcomes the inconsistency and lack of supportability. It has been held that an ALJ need not afford controlling weight to "'vague and unhelpful'" treating-source opinions in which the treating source "'fail[s] to identify objective medical findings to support'" his conclusions. *Makela v. Comm'r of Soc. Sec.,* 2022 WL 9833285, *5 (6th Cir., Oct. 17, 2022) quoting *Price v. Comm'r of Soc. Sec.* 342 F. App'x 172, 176 (6th Cir. 2009). Accordingly, here, without further explanation provided in the opinion, the ALJ was well within her purview to discount this opinion.

Tromler did, as noted above, point to several instances in the record where Pessefall's examination notes do suggest mental health concerns that could potentially have justified granting greater weight to the opinion. This Court, however, when reviewing the ALJ's disability conclusion is "limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The standard requires "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 241. Under this deferential standard we do not "resolve conflicts in evidence, or decide questions of credibility." *Maleka,* 2022 WL 9833285 at *3, citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). So long as substantial evidence supports the Commissioner's decision, this Court will not reverse "even if there is substantial evidence in the record that would have supported the opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). Here, the substantial evidence cited, and the ALJ's evaluation of

15

the consistency and supportability of that evidence, require that the Commissioner's decision be left undisturbed. I therefore recommend that this argument be denied.

### 2.    State Agency Reviewing Physician Opinions

Tromler further argues that the opinions of the State agency reviewing physicians were "neither supported by nor consistent with the medical evidence." (ECF Doc. 7, p. 11). She contends that the ALJ "did not build a logical bridge between the evidence documenting [her] disabling problems and the ALJ's decision to deny benefits", (*Id.*) and the "ALJ's determination was not supported by substantial evidence." (*Id.*). The Commissioner notes that the ALJ found the findings of the State agency psychological consultants generally persuasive, although the ALJ "found slightly greater limitation in interacting with others, but no more than moderate limitations overall." (Tr. 35). The ALJ also found that the evidence showed improvement in Tromler's depressive symptoms following her psychiatric hospitalization. (*Id.*). In assessing the opinions of the State agency medical consultants, the ALJ found them persuasive because they were "supported by and consistent with the record." (*Id.*). The Commissioner argues that Tromler has "failed to show any error of law, and substantial evidence supports the ALJ's evaluations of . . . the prior administrative medical findings of the State agency medical and psychological consultants." (ECF Doc. 9, p. 20).

The ALJ's decision clearly reflects that she thoroughly considered the opinions of the State agency consultants. As the Commissioner argued, the ALJ found the State agency mental health experts to be "generally persuasive", but, based on her careful review of the record, the ALJ imposed more restrictive limitations in her RFC than those recommended by the consultants. (Tr. 39). This reflects the thoughtful analysis the ALJ applied when evaluating the opinions in the context of the record as a whole. She noted the improvement Tromler showed

16

with her mental health symptoms, and the generally innocuous notes from Pessefall's examinations. While Tromler may not agree with the conclusions, there is a clear and logical bridge drawn from the evidence to the ALJ's assessment of the State agency mental health consultants' opinions. Thus, there is no error.

With regard to the State agency medical consultant opinions, the ALJ found these opinions persuasive. The ALJ's basis for this finding is clearly described in the decision and is based on the radiography and examination notes included in the record. (*Id.*) Again, a clear line is drawn from the evidence in the record to the ALJ's determination of the persuasiveness of these opinions, and I therefore cannot recommend remand on this basis.

**B. The ALJ properly applied the criteria of Social Security Ruling 16-3p when considering Tromler's subjective complaints.**

Here, Tromler argues that the ALJ did not properly evaluate all of her symptoms when formulating her RFC. Specifically, the ALJ did not consider evidence regarding Tromler's daily activities; the location, duration, frequency and intensity of her pain; the effects of medication; treatment received; and other factors concerning her functional limitations. (ECF Doc. 7, p. 12). Tromler specifically cites to her own function report and hearing testimony, as well her statements to treating sources, as evidence that she believes the ALJ failed to consider. She then found support for some of her subjective statements in the medical records. It is this corroboration that Tromler claims the ALJ failed to consider when assessing her capabilities, and, by not articulating her reasoning for finding her statements "not entirely consistent with the medical evidence" the ALJ committed reversible error. (*Id.* at p. 16).

The Commissioner contends that while the ALJ must consider the factors listed by Tromler, "there is no requirement that the ALJ discuss every factor." (ECF Doc. 9, p. 20, citing *Peery v. Comm'r of Soc. Sec.*, No. 1:16-CV-01848, 2017 WL 4077151, at *7 (N.D. Ohio, Sept.

14, 2017)). If the ALJ's determination is supported by substantial evidence, it must stand. Indeed, such findings "are virtually unchallengeable." (ECF Doc. 9, pp. 20-21, citing *Phillips v. Comm'r of Soc. Sec.*, No. 5:20-CV-126, 2021 WL 252542, *9 (N.D. Ohio Jan. 26, 2021)). The Commissioner then notes that the ALJ discussed Tromler's statements regarding her symptoms, alleged limitations, activities of daily living, and treatment. (Tr. 30). The ALJ further discussed how Tromler's testimony both corresponded with and contradicted the medical evidence. (Tr. 30-36, 186-88, 193, 250, 254, 440, 447-49, 473, 477, 480, 484, 490-507, 520, 514-15, 518-19 525). As Tromler's burden is to show that the ALJ's decision is not supported by substantial evidence, rather than that the evidence could feasibly support an alternate conclusion, the Commissioner contends that this argument fails. (ECF Doc. 9, pp. 23-24).

When assessing a claimant's subjective statements, "'the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged.'" *Grames v. Comm'r of Soc. Sec.*, 815 Fed. App'x 820, 825 (6th Cir. 2019) quoting *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011); SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017). Next, the ALJ must consider the objective medical evidence and the claimant's reported daily activities, as well as several other factors, to evaluate the intensity, persistence, and functional limitations of the claimant's symptoms. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, 2017 WL 5180304, at *4, *7-8 (Oct. 25, 2017). The ALJ must determine whether there is objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment that could reasonably be expected to produce the alleged pain. If there is, the ALJ considers all the evidence to determine the extent to which the pain affects the claimant's ability to work. *Heart v. Comm'r of Soc. Sec.,* 2022 WL

19334605, at *3 (6th Cir., Dec. 8, 2022), citing 20 C.F.R. §416.929 (a)-(c). The review in this case must be deferential. A reviewing court "must affirm the ALJ's decision as long as it is supported by substantial evidence and is in accordance with applicable law." *Showalter v. Kijakazi,* 2023 WL 2523304, at *2 (6th Cir., Mar. 15, 2023). Tromler's argument does not overcome this deferential standard of review.

The ALJ here determined that Tromler's medically determinable impairments of lumbar degenerative disc disease and major depressive disorder could reasonably be expected to cause her alleged symptoms. (Tr. 34). However, the ALJ determined that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*). With regard to her lumbar degenerative disc disease, the ALJ noted that throughout the records, examinations showed Tromler displayed no acute distress, had 5/5 strength and full range of motion, intact neurological functioning, normal coordination, normal gait, and no evidence of a prescribed or medically necessary assistive device. (Tr. 31). The examination findings did not support loss of strength, range of motion, sensation, reflexes or coordination that would support a disabling degree of limitation. (*Id.*). The ALJ acknowledged x-rays of the lumbar spine from January 11, 2023, showing mild to moderate degenerative changes (Tr. 32). She considered the generally benign findings of the consultative examiner, finding his somewhat vague assessment to be "generally persuasive" and supported by and consistent with the evidence," (Tr. 32-33, 35), as well as Tromler's chiropractic care. (*Id.*). The ALJ also referenced an appointment in July 2023 with Dr. Fink, with examination notes confirming normal gait and coordination. (Tr. 34).

As to Tromler's mental health, the ALJ discussed her ongoing care with Pessefall that both predated and followed from her hospitalization for suicidal thoughts on August 1, 2022. (Tr.

31-34). The ALJ noted that in her subsequent visits with Pessefall he described her as "having no gross abnormalities . . . friendly and communicative. Her mood was euthymic." (Tr. 32). She reported that she was "doing ok," and that she felt her medication was helpful. She reported feeling down at times, but it did not last all day. (*Id.*). She was engaging in social activities including having friends to her house to watch a football game, and hosting Thanksgiving. (*Id.*). Tromler did at times express that she may not be capable of working due to her depression, that her medications required adjustment, and that she was experiencing "passive suicidal thoughts," (Tr. 32-33), but consistently throughout her course of treatment Pessefall continued to note "no gross abnormalities. (*Id.*).

As noted above, the ALJ evaluated the opinions of the experts, including the State agency mental health experts, and adopted an RFC that was somewhat more restrictive than that suggested by those consultants. She also gave careful consideration to the opinions of consultative examiners and treating sources, offering reasoned analysis for her evaluations.

It is clear that the ALJ meaningfully considered Tromler's subjective complaints when formulating her RFC. She cited evidence both in favor of, and in opposition to, further limitation based on those subjective complaints, citing in particular the objective evidence with regard to her lumbar degenerative disc disease, and to the exhaustive notes of her treating sources with regard to her mental health. The ALJ considered the effectiveness of Tromler's medication and treatment. The thorough analysis provided by the ALJ created a logical and accurate bridge from the evidence to the RFC, allowing the plaintiff and reviewing court to understand her reasoning. Accordingly, I decline to recommend remand on this basis.

## VI.     Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by

substantial evidence, I recommend that the Commissioner's final decision denying Tromler's

application for DIB be affirmed.

Dated: November 18, 2024

Reuben J. Sheperd
United States Magistrate Judge

---

## OBJECTIONS

### <u>Objections, Review, and Appeal</u>

Within 14 days after being served with a copy of this report and recommendation, a party

may serve and file specific written objections to the proposed findings and recommendations of

the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C

636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the

assigned district judge.

\*\*\*

Failure to file objection within the specified time may result in the forfeiture or waiver of

the right to raise the issue on appeal either to the district judge or in subsequent appeal to the

United States Court of Appeals, depending on how or whether the party responds to the report

and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be

specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, 2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019).